UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LORA VANVLIET,<br><br>                   Plaintiff,<br><br>v.<br><br>LIBERTY HYUNDAI, INC. et al.,<br>                   Defendants. | Case No. 21-11874<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 12)**

## I.    INTRODUCTION

Plaintiff Lora Vanvliet sues her former employers Liberty Hyundai, Inc. and Liberty Chevrolet, Inc., which are both owned by the Feldman Automotive Group. ECF No. 1, PageID.2. Vanvliet alleges the employers discriminated and retaliated against her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, the Michigan Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. §§ 37.2101 *et seq.*, and the Michigan Persons with Disabilities Act (PWDCRA), M.C.L. §§ 37.1101 *et seq.*

Defendants moved for summary judgment, Vanvliet responded, and defendants replied. ECF Nos. 12, 13, 14. The Court heard oral argument on this motion on January 11, 2023.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment (ECF No. 12).

## II. FACTS

### A. Vanvliet's employment

Vanvliet was hired by defendant Liberty Chevrolet on June 9, 2019, then transferred to defendant Liberty Hyundai in August 2019. ECF No. 1, PageID.3. Vanvliet reported to Chris Quinn. ECF No. 12, PageID.75. Quinn was supervised by the general manager Michael Eagle, who managed both Liberty Hyundai and Liberty Chevrolet. *Id.*

### B. Vanvliet's sexual harassment and defendants' response

While working at Liberty Hyundai, Vanvliet was subjected to sexual harassment by a coworker, Steven LaPlante. For a month and a half, LaPlante made daily comments to Vanvliet about her body and describing sex acts he wished her to perform. ECF No. 1, PageID.3; ECF No. 13, PageID.197. Vanvliet repeatedly asked him to stop but he continued. ECF

No. 1, PageID.3. On September 13, 2019, LaPlante ran his hand up Vanvliet's leg to her private area in front of a customer. *Id.*

Defendants have in place an anti-harassment policy that proscribes harassment of any kind and details the steps an employee must take to report harassment. ECF No. 12, PageID.76. Vanvliet signed a copy of this policy. *Id.* The policy provides that employees should report harassment to their supervisor, or to the general manager or president if the employee does not feel comfortable discussing the issue with her supervisor. *Id.*

After LaPlante groped her, Vanvliet reported the incident to her supervisor Quinn. *Id.* Quinn escalated the complaint to the general manager Eagle. *Id.* Eagle collected a statement from Vanvliet. *Id.* He then met with LaPlante and instructed him to stay away from Vanvliet and stop harassing her. *Id.* He also instructed other staff members to ask LaPlante to leave if they saw him near Vanvliet. *See* ECF No. 13-8, PageID.293 (Liberty Hyundai employee Dustin Grant testified that management instructed him and other sales floor staff that LaPlante was "not supposed to be around [Vanvliet]" and that they should ask LaPlante to leave if they observed him near her.). Defendants took no further steps and LaPlante faced no disciplinary action. ECF No. 13, PageID.199.

From here, the parties' accounts diverge. Vanvliet alleges LaPlante continued to harass her, including making frequent, inappropriate comments about her legs and her bottom, telling her to sit on his lap, and telling her she owed him sexual favors. ECF No. 13, PageID.199. Vanvliet testified he harassed her "way more" than ten times after the September 13, 2019 incident. ECF No. 13-2, PageID.240-41. Vanvliet further testified that she reported this ongoing harassment to human resources manager Paige Milam, but Milam and defendants failed to investigate her complaints or take remedial measures. ECF No. 13-2, PageID.240; ECF No. 13, PageID.199-200. Liberty Hyundai employee Sean Sommerville recalled Vanvliet complaining of ongoing harassment by LaPlante after the September 13, 2019 incident. ECF No. 13-7, PageID.287.

Defendants, however, dispute that Vanvliet suffered any further harassment after the September 13, 2019 incident. ECF No. 12, PageID.84-85. They further contend that, if any harassment did occur after this date, Vanvliet did not report it. *Id.* When asked whether she received any other complaints about LaPlante, Milam answered "no". ECF No. 13-6, PageID.279. It is unclear whether Milam meant that she never received any

other complaints from Vanvliet regarding LaPlante or that she never received any other complaints from other employees regarding LaPlante.

In the written statement Vanvliet provided Eagle regarding the September 13, 2019 incident, Vanvliet included a note thanking Eagle for taking her complaint seriously. ECF No. 13-4, PageID.266. Defendants claim this is evidence they handled her complaint appropriately. *Id.* Vanvliet, however, says that when she sent this note, she believed Eagle's assurances that the company had zero tolerance for sexual harassment and would discipline LaPlante, but that ultimately, Eagle failed to make good on this promise because he merely gave LaPlante a verbal reprimand and subsequently failed to intervene as LaPlante continued to harass her.

### C. Vanvliet's disability and defendants' response

Vanvliet suffers from multiple sclerosis and rheumatoid arthritis, which make her particularly susceptible to infection. ECF No. 1, PageID.4. Both constitute disabilities under the ADA. *Id.*

On February 4, 2020, Vanvliet was sick due to her disabilities. *Id.* She received a doctor's note indicating she needed to be off work until February 10, 2020. *Id.*; ECF No. 13-9, PageID.296. She provided this note to

defendants on February 5, 2020 and requested approval for the time off. ECF No. 13, PageID.200.

According to Vanvliet, while she was out sick due to her disabilities, defendants terminated her employment. According to defendants, they did not terminate her, but transferred her from Liberty Hyundai to Liberty Chevrolet. ECF No. 12, PageID.79.

On February 7, Vanvliet's supervisor Quinn created and signed an exit interview form which states Vanvliet was being "discharge[d]", instructs the staff to terminate Vanvliet's email account and access to all internal systems, and in which Quinn indicated there were no circumstances under which he would ever hire her again. ECF No. 13, PageID.200-01; ECF No. 13-10, PageID.298. On February 10, 2020, when Vanvliet returned to work, she found her office cleaned out. ECF No. 13, PageID.201. John Strength, a manager at Liberty Hyundai, handed Vanvliet a termination letter and informed her that she was being fired at Eagle's instruction. ECF No. 13, PageID.201. Vanvliet asked whether she was being fired because of her disability; Strength replied he did not know but that she was "being let go" and it was Eagle's decision. *Id.*

Vanvliet left Liberty Hyundai. As she was driving home, Eagle sent Vanvliet multiple texts saying she had not been terminated but was in fact being transferred to Liberty Chevrolet. *Id.* Eagle instructed her to report to work, but Vanvliet, believing she had been fired, did not do so.

### D. Procedural history

Plaintiff filed a discrimination charge with the Equal Employment Opportunities Commission and received a right to sue letter on May 20, 2021. ECF No. 1, PageID.5.

### III. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion, courts must construe the facts in the light most favorable to the non-movant. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022).

### A. Hostile work environment claims

Vanvliet claims defendants subjected her to a hostile work environment in violation of Title VII and ELCRA.

To establish a hostile work environment claim under Title VII and ELCRA, a plaintiff must show 1) she is a member of a protected class; 2) she was subjected to unwelcomed sexual harassment; 3) the harassment was based on her sex, 4) the harassment created a hostile work environment, and 5) respondeat superior. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000).[1] Defendants contend Vanvliet cannot show the fourth or fifth elements. The Court disagrees.

As to the fourth element, a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether the alleged harassment is sufficiently severe and/or pervasive under the *Harris* standard, courts look to the circumstances surrounding the harassment, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it "unreasonably interferes with an

---

[1] Cases brought pursuant to ELCRA are analyzed under the same evidentiary framework used in Title VII cases. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Vanvliet alleges she endured near-daily verbal abuse by LaPlante for months. LaPlante's comments included demands for sexual favors and humiliating and inappropriate comments on Vanvliet's body. She also alleges LaPlante groped her leg up to her private area in front of a customer. This is both physically threatening and humiliating. Further, it occurred in front of a customer, which could interfere with her work performance. Given the frequency and graphic nature of the verbal abuse to which Vanvliet was subjected, and the physically threatening and humiliating nature of LaPlante's physical harassment, a jury could find the harassment LaPlante alleges was severe and pervasive enough to create a hostile work environment.

As to the fifth element, Vanvliet creates issues of fact regarding the *respondeat superior* element. To prove this element, a plaintiff must "establish that the employer had either actual or constructive notice of the hostile work environment and failed to take prompt and adequate remedial action. . . . An employer can be vicariously liable for a hostile work environment *only if* it failed to take prompt and adequate remedial action

upon reasonable notice of the creation of a hostile work environment." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012).

There is no dispute that defendants had actual notice of the groping incident. Vanvliet also asserts she gave actual notice of the subsequent ongoing harassment by LaPlante by reporting it to Milam. ECF No. 13-2, PageID.240; ECF No. 13, PageID.199-200. "To establish actual notice, a plaintiff must show that he reported the harassment to someone in higher management—that is, to someone in the employer's chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." *Id.* (internal quotations omitted). Milam, as the head of human resources, presumably had significant influence in the process of hiring, firing, and disciplining the offensive employee. Further, the head of human resources is perhaps the most obvious person in the chain of command to whom an employee would report sexual harassment, especially if, as in this case, she had already reported it to the general manager and been dissatisfied with his tepid response. Defendants dispute that Vanvliet reported any ongoing harassment to Milam. If she did, this is sufficient to establish actual

notice. Thus, a fact issue remains as to whether defendants had actual notice of the ongoing harassment.

Vanvliet also argues defendants failed to take prompt and adequate remedial action in response to her allegations. Defendants say that immediately after he received Vanvliet's report of the groping incident, Eagle instructed LaPlante to stop harassing Vanvliet and instructed other employees to intervene if they saw LaPlante near Vanvliet, and argue that these steps together constitute adequate remedial measures. The Court is unconvinced that these steps were sufficient to meet defendants' obligations. However, the Court need not reach this question at this stage, because Vanvliet alleges defendants took *no* remedial measures in response to her report of ongoing harassment by LaPlante after the groping incident. Taking *no* remedial measures is obviously inadequate. Viewing the facts in the light most favorable to Vanvliet, defendants failed to respond adequately to her complaints of ongoing harassment.

Because Vanvliet shows or creates fact issues as to each element of her hostile work environment claim, defendants' motion for summary judgment on this claim is **DENIED**.

**B. Disability discrimination claims**

Page **11** of **20**

Vanvliet alleges defendants discriminated against her because of her disabilities in violation of the ADA and PWDCRA. To establish a prima facie case of disability discrimination under the ADA and PWDCRA,[2] a plaintiff must show:

> (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016). Defendants argue Vanvliet cannot show the third or fifth elements.[3]

Even assuming that Vanvliet could show that she suffered an adverse employment action and therefore satisfies the third element, she cannot show the fifth element, and accordingly, her claim must be dismissed. To satisfy the fifth element, Vanvliet must show that her "position remained open while the employer sought other applicants or the disabled individual was replaced[.]" *Lambright v. Kidney Services of Ohio*, 998 F. Supp. 2d

---

[2] The PWDCRA substantially mirrors the ADA. *Donald v. Sybra, Inc.*, 667 F.3d 757, 763-64 (6th Cir. 2012); *see also Hurtt v. Int'l Servs. Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015).

[3] Defendants also argue that Vanvliet failed to properly request her sick time as medical leave for her disability. This is not relevant, as Vanvliet does not bring a failure to accommodate claim.

676, 687 (S.D. Ohio 2014) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)). Defendants argue she cannot show this because Vanvliet's position as business development coordinator at Liberty Hyundai was eliminated, which is what necessitated her transfer to the same role at Liberty Chevrolet. ECF No. 12, PageID.96. Defendants assert that Liberty Hyundai never sought other applicants, Vanvliet was never replaced, and her role has since been eliminated. *Id.* Vanvliet provides no evidence to the contrary. Instead, she asserts that, because she did not accept the new position at Liberty Chevrolet that defendants claim they offered her, this position must have remained open, and that this satisfies the fifth element. The Court disagrees. Vanvliet provides no evidence the position at Liberty Chevrolet remained open, nor any caselaw supporting her argument that an alternative position offered to the plaintiff can satisfy this element. And defendants assert they created the role just for her and did not hold it open when she turned it down. Accordingly, Vanvliet's discrimination claims under the ADA and PWDCRA are **DISMISSED**.

### C. Retaliation claims

Vanvliet alleges defendants retaliated against her by terminating her for taking protected medical leave. To establish a prima facie case for

retaliation under the ADA, a party must demonstrate: (1) she engaged in a protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer, thereafter, took an adverse employment action against her; and (4) a causal link exists between her engagement in the protected activity and the adverse employment action. *Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir. 2006). Where, as here, a plaintiff attempts to establish a *prima facie* case with circumstantial evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies. 411 U.S. 792 (1973). If the plaintiff establishes a prima facie case of discrimination, the employer must "articulate some legitimate, non-discriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden of production, the plaintiff must introduce evidence showing "that the proffered reason was not the true reason for the employment decision." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

Defendants argue that Vanvliet suffered no adverse employment decision because she was transferred rather than terminated. Vanvliet disputes this. As to this element, an obvious fact issue precludes summary judgment: was Vanvliet terminated? The exit interview form filled out and

signed by Quinn while Vanvliet was out sick and the termination letter handed to Vanvliet when she returned to work suggest she was terminated. However, Eagle's later text messages stating she was transferred but not terminated muddy the waters. The conflicting evidence regarding whether Vanvliet suffered an adverse employment decision is properly left for a jury to consider.

Defendants also argue Vanvliet cannot show a causal link exists between the protected activity and the adverse employment action. The Sixth Circuit has held that "the causal connection between the protected activity and the adverse employment action necessary for a *prima facie* case of retaliation can be established solely on the basis of close temporal proximity." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409-10 (6th Cir. 2014) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)

("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation.").

Vanvliet engaged in protected activity when she took sick leave. She was fired the exact day her leave ended. This temporal proximity is sufficient to raise an inference of retaliation. *See Judge*, 592 F. App'x at 409-10 (finding two-month period between the date employee's protected leave ended and the date of employee's termination sufficient temporal proximity to show a causal relationship); *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Mickey*, 516 F.3d at 526 (causal connection inferred where defendant fired plaintiff on the same day he filed an EEOC complaint); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (causal connection at the *prima facie* stage was established by the three months that passed between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work);

Page 16 of 20

*Deboer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005) (causal connection inferred where plaintiff was demoted the day after the she requested maternity leave). Vanvliet met her burden of showing a *prima facie* case of retaliation for both her ADA and PWDCRA claims.

Defendants also met their burden of articulating a legitimate, nondiscriminatory reason for firing Vanvliet. Defendants claim that Vanvliet was relocated to Liberty Chevrolet and her position at Liberty Hyundai was terminated because business volume was higher at Liberty Chevrolet. Reducing labor costs and improving efficiency are valid business reasons for conducting layoffs. *Madry v Gibraltar Nat. Corp.*, 526 Fed Appx 593, 597 (6th Cir. 2013). And Eagle's deposition testimony states he and Quinn discussed terminating Vanvliet's position at Liberty Hyundai and transferring her to Liberty Chevrolet before Vanvliet went on leave. ECF No. 12-5, PageID.144.

Vanvliet provides reason to think defendants' proffered reason may be pretextual. A plaintiff may meet her burden to demonstrate pretext by showing that "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Russell v. Univ. of Toledo*, 537

F.3d 596, 609 (6th Cir. 2008). Vanvliet's evidence suggests she was terminated rather than transferred, and that her termination had nothing to do with business efficiency. The exit interview form Quinn, Vanvliet's supervisor, completed on February 7, 2020 indicates she is being "discharge[d]" rather than transferred. ECF No. 13-10, PageID.298. The form also instructs staff to terminate Vanvliet's access to all internal systems of Feldman Automotive group, the owner of *both* Liberty Hyundai and Liberty Chevrolet, which further suggests she was being terminated rather than transferred. *Id.* And it indicates that Quinn recommended the Feldman group never hire Vanvliet again under any circumstances—not language an employer is likely to use to describe a current, continuing employee. *Id.* Further, Vanvliet testified that the day she returned from leave general manager Strength handed her a termination letter and informed her she was terminated. ECF No. 13, PageID.201. Defendants provide no satisfactory alternative explanation for either of these documents. Nor do defendants explain how these documents could conceivably link their decision to legitimate business interests. This is sufficient evidence to create a genuine issue as to whether defendants' proffered reason had no real basis in fact and was not in fact the true

Page **18** of 20

motivation for Vanvliet's transfer or termination. *See Russell*, 537 F.3d at 609.

Summary judgment on these claims is **DENIED**.

### D. Defendant Liberty Chevrolet

Defendant Liberty Chevrolet requests that the Court dismiss the claims against it because all Vanvliet's allegations relate to her employment at Liberty Hyundai and the conduct of Liberty Hyundai employees. The Court agrees. Liberty Chevrolet, though closely related and under shared ownership, is a separate entity. Allegations against Liberty Hyundai do not create liability for Liberty Chevrolet. The claims against Liberty Chevrolet are accordingly **DISMISSED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** defendants' motion for summary judgment (ECF No. 12) with respect to the claims against Liberty Chevrolet and the ADA and PWDCRA discrimination claims against Liberty Hyundai. Defendants' motion is **DENIED** with respect to Vanvliet's Title VII and ELCRA hostile work environment claims and with respect to her ADA and PWDCRA retaliation claims.

**IT IS SO ORDERED**.

|  |  |
|---|---|
| Dated: January 20, 2023 | s/Shalina D. Kumar<br>SHALINA D. KUMAR<br>United States District Judge |